1
2
3
4                                                    JS-6
5
6
7
8              UNITED STATES DISTRICT COURT
9              CENTRAL DISTRICT OF CALIFORNIA

10   ORLANDO GARCIA, an individual          Case No. 2:21-cv-00402-MCS-GJS
11
12              Plaintiff,                   **ORDER DENYING PLAINTIFF'S
                                             MOTION FOR DEFAULT
13           v.                              JUDGMENT [17]**

14   NOWELL PLAZA, LLC, a California
15   limited liability company;
16              Defendant.
17

18        Before the Court is Plaintiff Orlando Garcia's motion for default judgment

19   against Defendant Nowell Plaza, LLC. *See* Mot., ECF No. 17. Garcia visited

20   Defendant's 7–Eleven store at 7120 Atlantic Ave, Bell, California on August 25, 2020.

21   Mot. 1, ECF No. 17. Garcia went to Defendant's 7–Eleven store "to avail himself of its

22   goods and to assess the business for compliance with the disability access laws,"

23   including the Americans with Disabilities Act ("ADA"). Compl. ¶ 8, ECF No. 1.[1]

24   Garcia claims he encountered a parking lot at Defendant's 7–Eleven store that does not

25   contain wheelchair accessible parking. Compl. ¶ 11. Specifically, Garcia alleges that

26

27   _____

28   [1] The Court deemed the matter appropriate for decision without oral argument and
     vacated the hearing. Fed. R. Civ. P. 78(b); Local Rule 7-15.

1

the reserved parking spot and access aisle "had slopes that exceeded 2.1%" and that the parking lot may contain other ADA violations. *Id.* at ¶¶ 11–13. Garcia additionally alleges that "[g]iven the obvious and blatant nature of the barriers and violations alleged herein [,] . . . on information and belief . . . [,] there are other violations and barriers on the site that relate to his disability." *Id.* at ¶ 21. Garcia seeks injunctive relief under the ADA, $4,000.00 in damages under the Unruh Civil Rights Act, and $2,722.45 in fees and costs allegedly incurred. *See generally* Mot.

## I.  LEGAL STANDARD

### A. Article III Standing in an ADA Case

The party invoking federal jurisdiction bears the burden of satisfying each of Article III's standing requirements. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). Article III requirements "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, [so] each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

To satisfy Article III standing requirements, an ADA plaintiff must make "a sufficient showing of likely injury in the future related to the plaintiff's disability to ensure that injunctive relief will vindicate the rights of the particular plaintiff rather than rights of third parties." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 949 (9th Cir. 2011). "[A]n ADA plaintiff can show a likelihood of future injury when he intends to return to a noncompliant accommodation and is therefore likely to reencounter a discriminatory architectural barrier. Alternatively, a plaintiff can demonstrate sufficient injury to pursue injunctive relief when discriminatory architectural barriers deter him from returning to a noncompliant accommodation." *Id.* at 950. "An ADA plaintiff must show at each stage of the proceedings either that he is deterred from returning to the facility or that he intends to return to the facility and is therefore likely to suffer repeated injury. He lacks standing if he is indifferent to returning to the store or if his alleged

intent to return is not genuine, or if the barriers he seeks to enjoin do not pose a real and immediate threat to him due to his particular disabilities." *Id.* at 953. "[W]hile past actions may constitute 'evidence bearing on whether there is a real and immediate threat of repeated injury,' they are not necessarily dispositive evidence." *Civil Rights Educ. & Enf't Ctr. v. Hospitality Props. Trust*, 867 F.3d 1093, 1100 (9th Cir. 2017) (citation omitted).

**B. Default Judgment**

The Court considers several factors "in exercising discretion as to the entry of a default judgment includ[ing]: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Local Rule 55-1 requires the party seeking default judgment to submit a declaration establishing (1) when and against what party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator, or other representative; (4) that the Servicemembers Civil Relief Act does not apply; and (5) that the defaulting party was properly served with notice. C.D. Cal. L.R. 55-1.

**II. DISCUSSION**

Before addressing the *Eitel* factors and procedural requirements, the Court first assesses whether Garcia has met the constitutional prerequisite of establishing Article III standing to bring his ADA claim.

The Ninth Circuit has analyzed when a plaintiff has Article III standing to bring ADA claims in multiple cases. In *Pickern v. Holiday Quality Foods, Inc.*, a plaintiff encountered architectural barriers at a Holiday Foods grocery store seventy miles from his home and sued the grocery store for ADA violations. 293 F.3d 1133, 1135 (9th Cir.

2002). The plaintiff traveled to the town where the store was located because his grandmother lived in the same town as the store. *Id*. The plaintiff visited his grandmother on a weekly basis. *Id*. The plaintiff also preferred Holiday Foods grocery stores over other grocery stores and frequently shopped at the Holiday Foods grocery store near his residence. *Id*. The plaintiff stated he "would like to patronize" the Holiday Foods grocery store near his grandmother's house "but is deterred from doing so by the store's allegedly unlawful barriers." *Id*. The Ninth Circuit held that the plaintiff had standing to sue the store. *Id*. at 1137–39.

In *Doran v. 7–Eleven. Inc.*, a plaintiff sued an Anaheim, California 7–Eleven store for ADA violations. 524 F.3d 1034, 1038, 1040–41 (9th Cir. 2008). The plaintiff lived 500 miles from the store. *Id*. The Ninth Circuit held that the plaintiff had standing because he visited the "store on ten to twenty prior occasions, [] he is currently deterred from visiting the store because of its accessibility barriers, [] the store is conveniently located near his favorite fast food restaurant in Anaheim, . . . he plans to visit Anaheim at least once a year on his annual trips to Disneyland," and he would "return to the store" once the store fixed the barriers. *Id*. at 1040–41.

In *D'Lil v. Best Western Encina Lodge & Suites*, a plaintiff who lived in Sacramento, California sued a Best Western Encina hotel in Santa Barbara, California for ADA violations. 538 F.3d 1031, 1034 (9th Cir. 2008). The plaintiff visited Santa Barbara "1–3 times per year in connection with her work." *Id*. at 1037. She also vacationed in Santa Barbara with her family, visited friends in Santa Barbara, and planned future work–related trips to Santa Barbara. *Id*. at 1037-38. The plaintiff preferred to stay at the Best Western Encina hotel because she liked "the hotel's proximity to downtown, its accessibility from the freeway, [] its amenities," the hotel parking lot's proximity to each room, the food options, and the price. *Id*. at 1038. The Ninth Circuit found that the plaintiff had standing to sue the hotel. *Id*. at 1039.

In *Fortyune v. American Multi–Cinema, Inc.*, a plaintiff and his wife arrived at a movie theater twenty minutes before a "sold-out" movie started so they could obtain

4

one of the designated wheelchair spaces that had a companion seat. 364 F.3d 1075, 1078 (9th Cir. 2004). "[A] man and his son, who appeared to be neither disabled nor accompanying a wheelchair–bound patron, occupied two of the companion seats." *Id*. Pursuant to the theater's "written policy," the theater staff could not require attendees without disabilities "to vacate the companion seat[s]" if the theater sold all of the available tickets for a movie. *Id*. at 1079. The plaintiff and his wife left the movie theater because other attendees occupied all of the companion seats. *Id*. Despite this incident, they later returned to the movie theater and watched "three to four films each week." *Id*. "[T]o increase the likelihood that an empty companion seat [would] be available," the plaintiff and his wife arrived "45 minutes before a film's screening." *Id*. The Ninth Circuit held that the movie theater's "ongoing policy coupled with [the plaintiff's] past injury establishes a 'real and immediate threat' of his injury occurring again." *Id*. at 1082.

Here, Garcia alleges the following in his declaration: **(1)** "[d]ue to the lack of wheelchair accessible parking space, I have been deterred from further attempting to visit the 7–Eleven store;" (2) "I am in this area on a regular and ongoing basis and I will return to avail myself of goods and services and to assess compliance with the access standards;" and **(3)** "I would very much like to return to the 7–Eleven store and will do so as soon as the facilities are brought in compliance." Decl. of Orlando Garcia ("Garcia Decl.") ¶¶ 7–9, ECF No. 17–4.

Garcia has not provided any information about how close his residence is to Defendant's 7–Eleven store. Garcia has not stated how frequently he is in the same town as Defendant's 7–Eleven store. *See Pickern*, 293 F.3d at 1135 (finding standing in part because the plaintiff traveled to the same town as the Holiday Foods grocery store almost every week to visit his grandmother); *see Doran* 524 F.3d at 1038 (finding standing in part because the plaintiff traveled annually to Anaheim, California to visit Disneyland); *see also D'Lil*, 538 F.3d at 1037 (finding standing in part because the plaintiff traveled to Santa Barbara for work, family vacations, and visits with friends).

Garcia has not provided definitive reasons for why he would return to Defendant's 7–Eleven store. *See Pickern*, 293 F.3d at 1135 (finding standing in part because the plaintiff's favorite grocery store chain was Holiday Foods and he patronized the Holiday Foods grocery store near his residence); *see Doran*, 524 F.3d at 1040 (finding standing in part because the 7–Eleven store was next to the plaintiff's favorite fast food restaurant); *see also D'Lil*, 538 F.3d at 1038 (finding standing in part because the plaintiff liked multiple aspects of the Best Western Encina hotel such as the price, amenities, and location). Garcia also appears to only have visited the 7–Eleven store once. *See Doran*, 524 F.3d at 1041 (finding standing in part because the plaintiff "alleged that he had visited the 7–Eleven store on ten to twenty prior occasions"); *see also Fortyune*, 364 F.3d at 1079 (finding standing in part because the plaintiff and his wife "attend[ed] three to four films each week").

Simply put, Garcia has failed to provide information about the proximity of his residence to Defendant's 7–Eleven store, how often he travels to the area near the store, his definitive plans to return to the store, or how frequently he has visited the store. *Antonio v. Vanareth Kim Yi*, Case No. 2:14-cv-04323-SVW-AS, 2015 WL 13603781, at *2 (C.D. Cal. Mar. 4, 2015) ("Courts often examine four factors to determine whether a plaintiff had an intent to return: (1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant."); *Civil Rights Educ. & Enf't Ctr.*, 867 F.3d at 1100 ("Making case-by-case determinations about whether a particular plaintiff's injury is imminent is well within the competency of the district courts."). Garcia's statements are the type of conclusory averments that the Ninth Circuit finds insufficient to establish Article III standing in ADA cases. *See e.g., Feezor v. Sears, Roebuck & Co.*, 608 Fed. Appx. 476, 477 (9th Cir. 2015) ("A plaintiff's 'profession of an 'inten[t]' to return to the places [he] had visited before' is not sufficient to establish standing because '[s]uch 'some day' intentions—without any description of concrete plans, or indeed even any

specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.'") (quoting *Lujan*, 504 U.S. at 564); *Chapman v. Pismo Food Store*, 710 Fed. Appx. 769, 770 (9th Cir. 2018) ("Chapman also failed to demonstrate an intent to return to the store. Chapman failed to establish any regularity in his visits to Pismo Beach, where the store is located, and likewise failed to present sufficient evidence of more than a vague desire to return to the store."); *Strojnik v. Pasadena Robles Acquisition, LLC*, 801 F. App'x 569, 570 (9th Cir. 2020) (affirming dismissal of ADA action for lack of standing based on plaintiff's failure to adequately demonstrate intent to return).

Garcia also has not shown he is deterred from returning to Defendant's 7–Eleven store. *See Antonio*, 2015 WL 13603781, at *3. Garcia merely alleges he has "been deterred from further attempting to visit the 7–Eleven store" and would "like to return to the 7–Eleven store and will do so as soon as the facilities are brought in compliance." Garcia Decl. ¶¶ 7, 9. Garcia's statements do not establish standing under the deterrent effects doctrine. *Antonio*, 2015 WL 13603781, at *3 (finding that a plaintiff's statement that he was "deterred . . . from returning" but would do so if the liquor store "was ADA compliant" does not establish standing under the deterrent effects doctrine).

Garcia has failed to plead or proffer enough facts to establish standing to obtain the motion's requested relief. *Civil Rights Educ. & Enf't Ctr.*, 867 F.3d at 1100. The Court lacks jurisdiction over Garcia's ADA claim and cannot exercise supplemental jurisdiction over the remaining state law claim.

/ / /

/ / /

7

1

**III.    CONCLUSION**

        Based on the foregoing reasons, the Court **DENIES** Garcia's motion and dismisses, without prejudice, this action for lack of Article III standing. The Clerk shall close the case.

**IT IS SO ORDERED.**

Dated: May 5, 2021

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE